## Case No. 2,784.

In re CLAP.

Ex parte SMITH.

[2 Lowell, 226.] [1]

District Court, D. Massachusetts. March, 1873.

PARTNERSHIP DEBT—CONVERSION INTO DEBT OF SURVIVOR.

The mere exchange of the note of a firm, dissolved by the death of one partner, for a note similar in all respects to the surrendered note, signed with the firm's name, by the surviving partner, does not convert the joint debt into a separate debt of the surviving partner, unless it appears that such conversion was intended by the holder of the note.

In bankruptcy. The facts concerning the partnership of E. W. & S. G. Clap, and its dissolution by the death of the latter, the provisions of his will, and the state of the accounts and assets, were shown, in the case of George G. Tarbell [Case No. 2,783], petitioner. In 1852, J. C. Smith lent the firm $1,000, and took their promissory note, signed in the firm name, and was afterwards, before the death of S. G. Clap, paid $250 of the principal sum; interest was paid him yearly; and, in June, 1871, after the death of Samuel, he surrendered the old note, and took a new one, signed in the same firm name, which he held at the time of the bankruptcy. Neither party had any intention of changing the security by giving and taking the new notes; and whether Smith knew of the death of one partner is uncertain. The change was made merely because the old note was worn, and covered with indorsements. Smith petitioned to prove his debt against the joint estate.

T. L. Wakefield, for petitioner. 1. The new note was not payment of the old debt. Even in Massachusetts, whose law goes farther in this direction than that of most of the states, a note is only presumed to be payment until shown not to be so intended: Butts v. Dean, 2 Metc. [Mass.] 78; Curtis v. Hubbard, 9 Metc. [Mass.] 328; Watkins v.

[1] [Reported by Hon. John Lowell. LL. D., District Judge, and here reprinted by permission.]

Hill, 8 Pick. 522; Reed v. Upton, 10 Pick. 524; Thurston v. Blanchard, 22 Pick. 21; Melledge v. Boston Iron Co., 5 Cush. 170.

2. Taking the note was not an accord and satisfaction; because there was no new consideration and no advantage: it merely lost him one promisor: 2 Pars. Cont. 683, and notes g and h.

3. The consideration of the debt determines against whose estate it should be proved: Ex parte Christie, 3 Mont. D. & D. 736; Ex parte Brown, cited in 1 Atk. 225.

W. A. Field, for administrator of S. G. Clap. 1. Death of a copartner is a public fact of which persons interested are to take notice: Marlett v. Jackman, 3 Allen, 287.

2. The firm having been dissolved by the death of one partner, the survivor cannot bind his estate, unless by a contract duly made in closing up the business; and this note does not purport to be given by E. W. Clap as surviving partner, and was not so given in fact: Palmer v. Dodge, 4 Ohio St. 21; Lockwood v. Comstock [Case No. 8,449]; Parker v. Macomber, 18 Pick. 505; Perrin v. Keene, 19 Me. 355; Lumberman's Bank v. Pratt, 51 Me. 563; Lusk v. Smith, 8 Barb. 570; Hurst v. Hill, 8 Md. 399; Kilgour v. Finlyson, 1 H. Bl. 155.

3. The petitioner may have mistaken the law; but he did the act he intended to do, and the legal consequences are conclusively presumed to be within his knowledge and intent.. It is now well settled that an express or implied agreement to take the continuing partner as sole debtor is founded on good consideration, and slight circumstances will be sufficient to prove that the assent of the creditor to such a conversion: Thompson v. Percival, 5 Barn. & Adol. 925; Shaw v. McGregory, 105 Mass. 96; Ex parte Channel, 3 De Gex, F. & J. 752; Evans v. Drummond, 4 Esp. 89; Hart v. Alexander, 7 Car. & P. 746; Robs. Bankr. 508, 509, and notes.

Wakefield, in reply. If the note be treated as made by the surviving partner, it was within his authority as such: Ide v. Ingraham, 5 Gray, 106. See, too, T. Pars. Partn. 404; 5 Whart. 530; Brown v. Clark, 14 Pa. St. 469; Robinson v. Taylor, 4 Barr. [Pa. St.] 242. There are no circumstances, even slight, to prove a conversion of this debt.

LOWELL, District Judge. The doctrine laid down in Lodge v. Dicas, 3 Barn. & Ald. 611, and David v. Ellice, 5 Barn. & C. 196, that a promise by a joint creditor to look to one partner only and release the other is void for want of consideration, was soon changed in England by the case of Thompson v. Percival, 5 Barn. & Adol. 925, which has been followed ever since. And it is now perfectly well settled that such a contract is not void, and that the reason given for holding it so is unsound, since a separate debt may be more beneficial to the creditor than a joint debt: Hart v. Alexander, 2 Mees. &

W. 484; Lyth v. Ault, 7 Exch. 669. Supposing the partners to have agreed to convert the joint into a separate debt, the only inquiry is, whether this has been assented to by the creditor; and this is usually to be ascertained from the conduct of the parties. See an excellent summary of the decisions in 1 Lindl. Partn. (2d Ed.) 353. The question arises often in bankruptcy; because the fund out of which the creditor is to be paid may depend upon the answer. In bankruptcy, the prevailing doctrine is, that if the continuing partner has assumed the debts, whether by deed or parol, and the joint creditors have assented, before the bankruptcy, the conversion is complete. "It is apprehended," says Collyer (Partn. 5th Am. Ed. § 918), "that the conversion must depend on the assent [of the creditor], in whatever manner the assent is evidenced; that, although there be a deed, bare assent will be sufficient, though it would be insufficient at law; and that where there is no deed, assent will be necessary, although perhaps it might be unnecessary at law." In this country, the courts were reluctant to lose sight of the old common-law idea that a promise to take the sole responsibility of one of two joint debtors was nudum pactum; but I understand the later English doctrine has now fully prevailed here. For a discussion of this point, see In re Johnson [Case No. 7,369].

When the partnership has been dissolved by the death of one partner, the joint remedy is lost; but his estate may be followed in chancery, unless equitable considerations exist to prevent it, such as an express promise, or a course of dealing, or other circumstances, like those which would exonerate a retiring partner at law. Mr. Lindley, at the place above cited, says, "A court of equity will consider all the circumstances, and decline to assist the creditor, if, upon the whole, justice so requires;" but adds, that the small number of cases in which relief has been refused, compared with those in which it has been granted, shows the leaning of the court in favor of the creditor. And this remark is fully borne out by the authorities: Devaynes v. Noble (Sleech's Case) 1 Mer. 530; Winter v. Innes, 4 Mylne & C. 101; Harris v. Farwell, 15 Beav. 31. In Massachusetts, the debt is severed at law by the death, and the creditor may proceed against the estate of the decedent as if for his sole debt. Gen. St. c. 97, § 28. It is not necessary to resort to chancery; but the citations above given will prove that the rule is substantially similar in both jurisdictions. In bankruptcy, notwithstanding the severance, the joint creditor retains his right to be paid out of the joint estate: Burnside v. Merrick, 4 Metc. [Mass.] 537; Howard v. Priest, 5 Metc. [Mass.] 582; Lodge v. Prichard, 1 De Gex, J. & S. 610; Ridgway v. Clare, 19 Beav. 111; Hills v. McRae, 9 Hare, 297. In this case, there is no evidence that the estate of Samuel Clap was entitled to

be exonerated from the joint debts, or that the bankrupt had agreed to assume them, or any other of the circumstances or equities from which such an agreement would be inferred; so that there is no foundation on which to base a supposed assent of creditors. The case stands nakedly on the fact that the creditor has taken a negotiable security from the surviving partner. It is undoubtedly true, that if a creditor of two partners takes the negotiable security of one, in satisfaction of his debt, his remedy against the other is gone. The leading case of Thompson v. Percival, above cited, was of that character. This decision is approved by Mr. Justice Story, Partn. (6th Ed.) § 155, and see the cases in note 3 to that section. But if the note or bill of one partner is not taken as satisfaction, but as security for the joint debt, the creditor may, if the security is dishonored, sue or prove in bankruptcy, as the case may be, on the original debt. Indeed, he may often have his election to prove against one or the other. This is familiar law in ordinary transactions, and has been often applied to the case of partners. Thus where, at the time of taking the separate security, the creditor expressly reserved his rights against the retiring partner, and retained the bill which had his name upon it, no discharge was worked: Bedford v. Deakin, 2 Barn. & Ald. 210. The intent is the pivot of the matter; though there are a few cases, like Harris v. Lindsay [Case No. 6,-123], in which the intent is conclusively presumed from conduct which would amount to a sort of estoppel, of all which circumstances this case is free. Potter v. McCoy, 26 Pa. St. 458.

The difference between the law of Massachusetts and that of England and most of the states of the Union, I understand to be merely this: That in the courts of this state a negotiable bill or note is taken to be a more beneficial security than a book account, or any debt of that kind, and, though it does not operate as a merger in law, is presumed prima facie to be taken as payment. But it is a mere question of fact, and any evidence which rebuts the presumption is competent, and it is easily overcome. In other courts, the ordinary presumption of fact is the other way. On the other hand, I suppose that it is not difficult to find cases out of Massachusetts in which the deliberate exchange of one note for another is presumed to be intended as a payment of the note given up; but this is rather because the old one is given up than because the new one is taken. See Newmarch v. Clay, 14 East, 239; Arnold v. Camp, 12 Johns. 409. But the question always comes back to the intent of the parties. Melledge v. Boston Iron Co., 5 Cush. 158, cited by the petitioner, much resembled the present case. There the plaintiffs sold goods to an incorporated company, and took the note of its agents, supposing the signature to bind the com-

pany. The judge at the trial ruled that if the plaintiff received the notes under a misapprehension concerning the identity of the parties, and this mistake was caused by the acts of the company, the original debt would not be merged or lost. This instruction was held by the court to be sufficiently favorable to the defendants. I do not consider the latter clause of the instruction, that the belief was induced by the acts of the company, to be essential. The question is one of intent; and, if there was a misapprehension, that is enough, provided no equities have intervened to make it unjust to correct the mistake. It was on this ground that the ruling was sustained, and was said to be not too favorable to the plaintiff. It was less favorable than the law would have warranted. In this case, I am asked to presume that the petitioner must have known the death of one partner, the contents of his will, and the legal effect of these facts; and thence to infer that the note was taken for whatever it might legally turn out to be; which, on the face of it, is precisely what the old one was, but in law, it is said, can only bind the bankrupt individually. If there was a mistake, it is added, the law only was misconceived.

If the mere fact of the exchange of notes were shown, the presumptions might follow; but inferences cannot prove what both parties testify was not the fact. If the mistake were wholly one of law, such a mistake is often sufficient, even in a criminal case, where policy allows no mistakes of law, to rebut an inference of intent; but the mistake here appears to have been partly concerning the status of the partnership, depending on facts not known to the petitioner, though he might, perhaps, if the contrary were not proved, be presumed to know them.

There is another point to be considered. The surviving partner, who was likewise executor of his brother's will, was liable in two capacities to pay this debt; and his giving a note for it, in one capacity, ought hardly to be held to exonerate himself in the other, especially when on the face of it the intent is to bind both. By the death the debt was severed; the creditor might sue the surviving partner for the whole at common law, and he might sue the executor for the whole by virtue of the statute. Why should an acknowledgment of the debt by one exonerate the other, in the absence of any direct evidence of such a purpose, and even against the direct evidence? I hold, therefore, that this note ought not in bankruptcy to be construed as the separate note of E. W. Clap, doing business under the name of the late firm, because it was not so intended by the parties; and that the note, whatever it may be in itself, being made under the circumstances admitted here, does not convert the debt into the separate debt of the now bankrupt, nor extinguish the original liability of the old firm; and it follows that the peti-

tioner is entitled to come in against the joint assets remaining in specie of the original firm. Order accordingly.